## Case No. 5,526.

### The GONDAR.

[Blatchf. Pr. Cas. 266.] [1]

District Court, S. D. New York. Dec., 1862. [2]

PRIZE—OBJECTION TO CONDEMNATION—BLOCKADE—FALSE PAPERS.

1. An objection that this vessel, seized by naval forces in the harbor of Beaufort, N. C., after its capture, and while that place was in custody of the army of the United States, was not subject to capture solely by the naval forces, overruled. If the vessel and cargo are subject to condemnation, the claimants cannot contest in a prize court the competency of the libellants alone to control the proceeds of the forfeiture.

2. Vessel and cargo condemned (1) for having violated the blockade in entering Beaufort; (2) for shipping there a new cargo, with intent to violate the blockade in coming out; (3) for taking an export license and clearance from the enemy at Beaufort; (4) for a false representation on the vessel's papers as to who was master of the vessel.

In admiralty.

BETTS, District Judge. This case, in most of its main features, coincides with that of The Alliance [Case No. 243], decided in this court a few days since. Parts of the testimony in each case have been invoked by the libellants into the other. Both vessels were of American build, were the property of the same owners in this country, and were transferred at one time to the same English claimants, by proceedings exactly similar; and the two vessels went into the port of Beaufort, one on the 22d and the other on the 28th of August, 1861, both having knowledge of the blockade existing at the time, and were there loaded with cargoes and documented for departure in substantially the same manner. Many other circumstances detailed in the proofs in the two cases are omitted in this

1 [Reported by Samuel Blatchford, Esq.]
2 [Reversed in Case No. 5,528.]

concise notice of the grounds of decision, which may be more specially spread out in an opinion in extenso, should the cases be removed on appeal. The shipping articles in this case, dated at Liverpool, July 5, 1861, contract for a voyage from Liverpool to Nassau, and any ports and places in the United States, and back to a port of discharge in England. No sea-log was found on board at the capture. The official log-book, signed by the master, enters the commencement of the voyage as being July 5, 1861, "to Nassau, N. P., and one port in the United States, and back to Liverpool." It states that the vessel arrived at Beaufort August 28, and was ready for sea September 14, 1861. The master, mate and one seaman were examined on interrogatories. The vessel was captured at anchor in Beaufort harbor, May 2, 1862, by the United States vessel-of-war Gemsbok, various other war vessels being present. The vessel was laden at Liverpool with 4,300 sacks of salt and 112 tons of iron, which were discharged in Beaufort harbor, and she was there reladen with a cargo of spirits of turpentine, resin and cotton, all of which was taken on board prior to September 14, 1861. She was ready for sea on that day. The cargo was shipped by Dill, a resident of that port, for the owners of the vessel. The master, Jennings, knew that the port was blockaded, but he asserts that the first time he saw a blockading vessel there was on the 6th or 7th of September, 1861, and that he saw none off the port when the ship entered it. Most of the return cargo was taken on board after the blockading vessel appeared off the harbor. The present master, Jennings, was put in command of the ship at Beaufort, after her former master, Gooding, left her. Whilst she lay at that port, the Confederate steamship Nashville came in and went out; and a day or two before that vessel went out, the former master, Gooding, put the former mate, Jennings, in command of the Gondar. Jennings says it was rumored that Gooding was transferred to the command of the Nashville and went to sea on her, and that he had not seen him since. The same witness says that the Gondar was in Charleston harbor at the time of the bombardment of Fort Sumter, and returned thence to Liverpool, from which port she proceeded on the voyage on which she was arrested, and entered the port of Beaufort in August, 1861, and was arrested there.

The presumption, from the facts, is exceedingly cogent, that the voyage was set on foot and prosecuted to its termination with full knowledge, by the master and owners of the vessel and cargo, that the port of Beaufort was at the time in a state of blockade, and with intent to evade such blockade. No proof is found in the ship's papers, or in the preparatory examinations, repelling or displacing such presumptions. The defence is placed essentially upon the legal immunity of neutral ships from liability to capture be-

cause of acts done in a prior voyage; and upon the further fact, that, at the time of the seizure of this vessel, the enemy port of Beaufort and its appendant station, Morehead City, were held in the military custody of the army of the United States, and, for that cause, she, as a neutral vessel, was not subject to capture solely by the naval forces of the government. It is not shown that there was any co-operation between the land and the naval forces in the arrest of the vessel and cargo on this occasion, nor any concert even in the proceedings leading to that end, nor does the army make claim to any interest in the capture. Wheat. Capt. 288; The Dordrecht, 2 C. Rob. Adm. 55. If the vessel and cargo were in delicto and are subject to condemnation, the claimants have no power to contest in the prize court the competency of the libellants alone to control the proceeds of the forfeiture. Beaufort or Morehead City was, undoubtedly, a neutral port as to the vessel and cargo, when they entered it. It was, however, an enemy port to the United States, and the acts of the vessel and cargo in going to the port, and whilst in it, were hostile to the United States, and impressed upon them the character of enemy property, because the voyage was undertaken with intent to evade the blockade of the port in entering it, and the vessel obtained therein the cargo arrested on board, with the intention of running the blockade in exporting such cargo, which would render that, also, a hostile act. Under the uniform course of decisions in the courts of the United States during the present war, both of these acts of the vessel were violations of the law of nations, and subject the vessel and cargo seized to forfeiture, she having sought and entered the port of Beaufort knowing it to be blockaded, and having there acquired a new cargo, intending to violate the blockade in exporting it. Upton, Mar. Warf. & Pr. (2d Ed.) 309 et seq. The ship's papers are also found to contain that official recognition of, and affinity with, the enemy, which imports a hostile association with it, adopting and submitting to its authority as an independent and lawful power. As in the previous case of The Alliance, the vessel shielded herself by a Confederate clearance and export license. It has frequently been adverted to, in the course of decisions by this court, that it is legal cause of forfeiture for a neutral vessel to clothe herself in time of war with protective documents obtained from the enemy. In the present instance the Gondar had on board a Confederate export license and clearance, which are evidence of a criminal adhesion to the rebel government. The Julia, 8 Cranch [12 U. S.] 181; The Ariadne, 2 Wheat. [15 U. S.] 143, and notes in Appendix. There was, moreover, a false representation on the ship's papers, Gooding having signed and sworn to the manifest of the cargo September 14, as master of the vessel, and having taken out

a certificate of the clearance of the vessel as master thereof, dated the same day, duly executed by J. F. Bell, as collector of that port, when it is proved that he surrendered the command of the vessel to Jennings, the first mate, and appointed him master, and went off in the Confederate steamer Nashville early in March previous. I find in these various particulars ample cause for the condemnation of the vessel and cargo captured, and direct a decree to be entered accordingly.

This decree was, on appeal, and on further proof, reversed by the circuit court, January 8, 1864. [See Cases Nos. 5,527 and 5,528.]